## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ENVIRONMENTAL INTEGRITY PROJECT<br>1000 Vermont Ave NW, Suite 1100<br>Washington, DC 20005;<br><br>EARTHJUSTICE<br>50 California Street, Suite 500<br>San Francisco, CA  94111; and<br><br>SIERRA CLUB<br>85 Second Street, 2nd Floor<br>San Francisco, CA 94105-3411;<br><br>Plaintiffs,<br><br>     v.<br><br>SMALL BUSINESS ADMINISTRATION<br>409 3rd Street SW<br>Washington, DC 20416;<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.        Plaintiffs Environmental Integrity Project, Earthjustice, and Sierra Club

(collectively, "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, by Defendant Small Business Administration ("SBA"), for improperly withholding

requested agency records concerning a draft regulation proposed by the U.S. Environmental

Protection Agency ("EPA") to revise the effluent limitation guidelines for the Steam Electric

Power Generating Category ("Steam Electric ELGs") to reduce coal-fired power plant water

pollution.

2.       The SBA was heavily involved in the inter-agency review of the Steam

Electric ELGs proposed rule.  Plaintiffs, public interest groups that support a federal rule to

control toxic water pollution from coal-fired power plants, submitted a FOIA request to the SBA

on April 25, 2013 for documents relating to SBA's involvement in the review of the Steam

Electric ELGs proposed rule.  *See* Exhibit A.

3.   Coal-fired power plants are by far the largest discharger of toxic pollution in the

United States, dumping billions of pounds of arsenic, selenium, cadmium, and other dangerous

pollutants into rivers, streams, and lakes every year.  The current Steam Electric ELGs have not

been revised since 1982 and contain no limits for toxic pollution associated with coal combustion

waste discharges.  Without federal standards, nearly 70% of Clean Water Act discharge permits

for coal-fired power plants allow unlimited discharges of arsenic, boron, cadmium, mercury, and

selenium in violation of the Clean Water Act.  *See* Environmental Integrity Project et al., Closing

the Floodgates: How the Coal Industry is Poisoning our Water and How We Can Stop It (July

23, 2013), *available at*

http://www.environmentalintegrity.org/news_reports/documents/2013_07_23_ClosingTheFlood

gates-Final.pdf.

4.       To ensure that the Steam Electric ELGs reflect advances in control

technology, the Clean Water Act requires EPA to review and, if appropriate, revise these effluent

limitations and underlying ELGs at regular intervals.  42 U.S.C. §§ 1311(d), 1314(b).  Section

301(d) of the Clean Water Act requires that all effluent limitations "*shall* be reviewed at least

every five years, and, if appropriate, revised."  *Id*. § 1311(d) (emphasis added).  Similarly, with

respect to ELGs, section 304(b) of Clean Water Act requires that "the Administrator *shall* . . .

publish . . . regulations, providing guidelines for effluent limitations, and, at least annually

thereafter, revise, if appropriate, such regulations."  *Id.* § 1314(b) (emphasis added).

5.        After three decades of delay, EPA is finally poised to act on this

command.  On April 19, 2013, EPA signed a proposed rule to revise the Steam Electric ELGs,

and the proposal was published in the Federal Register on June 7, 2013.  EPA must finalize the

rule by May 22, 2014 pursuant to a consent decree.

6.        The White House Office of Management and Budget ("OMB") reviewed a

draft of EPA's Steam Electric ELGs proposed rule for ninety days before the proposal was

released, and played a substantial role in modifying and weakening the proposed rule.

Representatives of the SBA attended at least four meetings with OMB and EPA related to this

rulemaking.  *See* Office of Mgmt. & Budget, Meeting Records,

http://www.whitehouse.gov/omb/oira_meetings (last visited December 9, 2013).  Plaintiffs filed

a FOIA request with SBA on April 25, 2013, requesting SBA records not yet publicly disclosed

that would shed light on SBA's involvement in the rulemaking process.  Exhibit A.  Among

other things, Plaintiffs sought SBA records that may relate to the specific revisions OMB

required EPA to make to the proposed rule, what factors or special interest groups influenced

OMB revisions, and the legal, scientific, and technical basis for OMB revisions to EPA's initial

draft of the proposed rule.  *Id.*

7.        SBA released a portion of the documents requested on June 3, 2013 and

August 7, 2013.  *See* Exhibits B and C.   On August 7, 2013, SBA also refused to provide twenty

(20) responsive records requested by Plaintiffs, claiming that the withheld documents are exempt

pursuant to 5 U.S.C. § 552(b)(5), but without providing adequate justification for the

withholdings or releasing reasonably segregable non-exempt portions of the records.  Exhibit C.

Plaintiffs timely appealed the partial denial on September 11, 2013.  Exhibit D.  In response to Plaintiffs' appeal, SBA released one additional record on November 7, 2013, but affirmed its initial denial of the remainder of the withheld documents without providing adequate justification for the withholdings or reasonable segregable non-exempt portions of the records. Exhibit E.

8.      Timely disclosure of the records requested in Plaintiffs' FOIA request to SBA are of vital importance to Plaintiffs and the public in order to critically evaluate the proposed rule, as well as the final rule due on May 22, 2014.

9.      The Plaintiffs seek a judgment that SBA has violated FOIA by improperly withholding the records requested by Plaintiffs.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.  Venue is proper in the District Court for the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B).

11.      Under FOIA, this Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from complainant."  5 U.S.C. § 552(a)(4)(B).  "The FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

12.      This Court may award attorney fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

**PARTIES**

13.        Plaintiff Environmental Integrity Project ("EIP") is a nonpartisan, nonprofit organization founded in 2002 by former EPA enforcement attorneys to advocate for more effective enforcement of environmental laws. EIP's three objectives are: to provide objective analysis of how the failure to enforce or implement environmental laws increases pollution and affects the public's health; to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws; and to help local communities in key states obtain the protection of environmental laws.

14.        EIP advocates for laws to protect public health and the environment from air and water pollution from coal-fired power plants and other large sources of pollution.  As part of its efforts to ensure effective enforcement of environmental laws, EIP participates in federal and state rulemakings related to water pollution from the utility industry and brings lawsuits to enforce the Clean Water Act on behalf of community and environmental groups that are harmed by coal plant pollution.  In addition, EIP uses public data obtained through FOIA requests to develop reports, media materials, and litigation briefs that educate the public and decision-makers, and achieve its objectives.  EIP also disseminates information through its website, www.environmentalintegrity.org.

15.        Earthjustice is a nonprofit public interest law organization dedicated to protecting the magnificent places, natural resources, and wildlife of this earth, and to defending the right of all people to a healthy environment.  Earthjustice has made safeguarding the nation's waters one of its top priorities, and brought numerous lawsuits to enforce the Clean Water Act in the public interest.

16.     Earthjustice publicizes information received from FOIA requests in its monthly electronic newsletter, which serves approximately 750,000 online supporters, as well as its quarterly magazine, which services approximately 80,000 subscribers.  Earthjustice also disseminates information obtained through FOIA requests through its web site and blog, www.earthjustice.org, which averages 100,000 unique visitors each month.  In addition, Earthjustice utilizes an online action alert system to urge members of the public to contact policymakers and ask them to take action based on information received from FOIA requests. Earthjustice's communications staff disseminates newsworthy information obtained from FOIA requests to the media, and Earthjustice's lobbyists provide relevant information obtained from FOIA requests to elected officials in Washington.

17.     The Sierra Club was founded in 1892 and is the nation's oldest grassroots environmental organization.  The Sierra Club's national headquarters is located in San Francisco, California.  The Sierra Club is a nonprofit, membership organization incorporated in California with more than 600,000 members in all 50 states and the District of Columbia.  The Sierra Club's purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

18.     The Sierra Club's Beyond Coal campaign is a major effort to "replace dirty coal with clean energy by mobilizing grassroots activists in local communities to advocate for the retirement of old and outdated coal plants and to prevent new coal plants from being built."  As part of its campaign, Sierra Club has prioritized its efforts to ensure that coal-fired power plants comply with the Clean Water Act and other environmental laws, and has an active communications, organizing, and litigation campaign to further these efforts.

19.     The Beyond Coal campaign participates in dozens of proceedings annually, has a large communications budget, and communicates weekly with tens of thousands of citizens.  Campaign experts and attorneys use available information to develop reports, media materials, and litigation briefs that further educate the public and decision-makers.  Through that campaign, Sierra Club has built an extensive national network of public organizations and individuals interested in these issues, and it communicates with them regularly.  The Sierra Club also disseminates information through its website, www.sierraclub.org.

20.     Plaintiffs routinely use FOIA to obtain information from federal agencies, which Plaintiffs' legal and scientific experts analyze in order to inform their members and the public about air and water pollution from coal-fired power plants and other large sources of pollution.  Plaintiffs regularly convey important information to their members and the public through publications and press releases, as well as by releasing to the public information and documents obtained through FOIA requests.

21.     Plaintiffs bring this action on their own behalf and on behalf of their members.  Plaintiffs and their members have been and continue to be injured by Defendant's failure to provide requested records within the timeframes mandated by the FOIA.  The requested relief will redress these injuries.

22.     Defendant SBA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession or control of the records Plaintiffs seek in this action.

## LEGAL BACKGROUND

23.     FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies.  5 U.S.C. § 552(a)(3)(A).  These exemptions are narrowly construed, and the agency bears the

burden of establishing the applicability of each exemption as to each document for which it is claimed.  *See Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1262 (2011).

24.     Upon receiving a FOIA request, an agency has twenty working days to respond with a determination that "inform[s] the requestor of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions."  *Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("*CREW*"); 5 U.S.C. § 552(a)(6)(A); 13 C.F.R. § 102.4(a).  An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances."  5 U.S.C. § 552(a)(6)(B); 13 C.F.R. § 102.4(a).  FOIA further requires agencies to make records themselves "promptly available" to requesting parties.  5 U.S.C. § 552(a)(3)(A); *CREW*, 711 F.3d at 188.

25.     If an agency withholds responsive records, the burden is on the agency to prove that an exemption applies and outweighs FOIA's policy of disclosure.  *See, e.g.*, 5 U.S.C. § 552(a)(3); *National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 n. 20 (D.C. Cir. 1976) ("The party seeking to avoid disclosure bears the burden of proving that the circumstances justify nondisclosure.").

26.     In this case, SBA has invoked Exemption 5, which applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Courts employ a two-part test to examine an agency's withholding of deliberative information under Exemption 5: (1) the document must be either inter-agency or intra-agency, and (2) the document must be both predecisional and part of the agency's deliberative or decisionmaking process.  *See, e.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001).

27.     In addition, the agency must release any "reasonably segregable" non-exempt information, including factual information, to the public.  5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletions of the portions which are exempt under this subsection.").  "Purely factual material usually cannot be withheld under Exemption 5."  *See, e.g.*, *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 510 (D.C. Cir. 2011).

28.     If an agency makes an initial determination that it will deny a FOIA request in whole or part, the requester is entitled to administratively appeal the determination within thirty calendar days.  13 C.F.R. § 102.8.  FOIA requires the agency to make a determination with respect to an administrative appeal of a denial of a request within twenty working days.  5 U.S.C. § 552(a)(6)(A)(ii).

29.     FOIA provides that the District Court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

30.     FOIA permits the Court to "assess reasonable attorney fees and other litigation costs reasonably incurred in any case in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).

**FACTUAL BACKGROUND**

31.     Power plants dump more toxic pollution into our rivers, streams, and lakes than any other industry in the United States based on toxicity and volume.  According to EPA, coal-fired power plants discharge approximately *5,500,000,000 pounds* of pollution each year.  EPA estimates that power plant discharges constitute more than half of all toxic pollution discharged by all regulated industrial categories.

32.      EPA has identified at least 41 heavy metals and other polluting substances as "potential constituents of concern" in coal-fired power plant wastewaters, including arsenic, selenium, mercury, and lead.  Many of these pollutants pose serious health risks even in very low concentrations.  The current Steam Electric ELGs, which have not been updated since 1982, do not impose any limits on the vast majority of these pollutants.

33.      EPA has made clear that affordable treatment technologies are available to clean up and, in many cases, eliminate these dangerous and illegal discharges.  On April 19, 2013, EPA signed a proposed rule to revise the Steam Electric ELGs, and the proposal was published in the Federal Register on June 7, 2013.  The proposed rule contains a range of options to control power plant wastewater that differ substantially in their rigor.  The weakest option which the proposal puts forward as "preferred" would control approximately 2.2 billion pounds per year less than the strongest preferred option.  In contrast, the two strongest options would eliminate between 3.3 and 5.2 billion pounds of the total 5.5 billion pounds of pollution discharged from coal power plants each year.  Under the terms of a consent decree, EPA must finalize the rule no later than May 22, 2014.

34.      Three months before signing the proposed Steam Electric ELGs rule, EPA provided a draft of the proposed rule to OMB.  OMB coordinated the federal government's inter-agency review process.  During that process, OMB met with SBA, regulated entities, and with agencies that may have had concerns about requiring the most stringent controls available to control coal plant discharges or otherwise have an interest in the Steam Electric ELGs rulemaking.  Representatives of the SBA attended at least four meetings with OMB and EPA related to this rulemaking.  *See* Office of Mgmt. & Budget, Meeting Records, http://www.whitehouse.gov/omb/oira_meetings (last visited December 9, 2013).

35.       EPA records show that OMB made changes to EPA's proposed rule that weakened the regulations.  For example, OMB added two options to the rule that would exempt certain power plants from compliance with best available control technologies based on the capacity of their generating units.  OMB also replaced one of EPA's preferred options, which would have eliminated discharges associated with coal ash handling and required controls to significantly reduce toxic discharges associated with Flue Gas Desulfurization wastewater, with significantly weaker preferred options.

36.       On April 25, 2013, Plaintiffs submitted a FOIA request to SBA asking SBA to release records in three categories: "(1) all records exchanged and all records related to any meetings, telephone conversations, emails, or any other communications between SBA and the utility industry, representatives of the utility industry, trade groups, special interest groups, and/or other non-governmental parties related to the Effluent Limitation Guidelines for the Steam Electric Generating Category; wastewater discharges from coal-fired power plants; and/or treatment technologies, or best available technology economically achievable ("BAT") for wastewater discharges from coal-fired power plants since April 3, 2013; (2) all records exchanged and all records related to any meetings, telephone conversations, emails, or any other communications between SBA and the EPA; OMB, Council on Environmental Quality; Executive Office of the President; and/or White House staff, including, but not limited to, Heather Zichal, Rob Nabors, and Denis McDonough during interagency review for EPA's proposed Steam Electric ELGs Rule; and (3) all records related to handling of bottom ash wastewater, flue gas desulfurization (FGD) wastewater, and combustion residual leachate." Exhibit A.  The FOIA requested a fee waiver and expedited processing.  *Id.*

37.      SBA received Plaintiffs' April 25, 2013 request on April 26, 2013.

Exhibit F.  SBA denied Plaintiffs' request for expedited processing on May 8, 2013.  Exhibit F.

After initially denying Plaintiffs' fee waiver request in part, SBA granted the fee waiver request

in full in response to Plaintiffs' appeal on June 26, 2013.  Exhibits H, I, and J.

38.      On June 3, 2013, SBA provided all category (1) and (3) records.  Exhibit

B.

39.      On August 7, 2013, SBA notified Plaintiffs that it had identified forty-four

(44) category (2) records.  Exhibit C.  In addition, SBA released twenty-four (24) of these

documents and stated—without providing any justification or releasing reasonably segregable

non-exempt portions of the records—that it was withholding the remaining twenty (20)

documents under Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5).  *Id.*

40.      On September 11, 2013, Plaintiffs appealed SBA's partial denial of the

FOIA request because SBA's Exemption 5 withholdings were overbroad, vague, and wholly

failed to provide reasonably segregable non-exempt portions of the records responsive to

Plaintiffs' FOIA request.  Exhibit D.  In fact, in its August 7, 2013 letter, SBA did not provide a

list of the withheld documents, let alone an explanation of why each document is properly

withheld from disclosure.  *See* Exhibit C.

41.      In response to Plaintiffs' appeal, SBA provided a list of the twenty

previously withheld category (2) records and released one of the records on November 7, 2013.

*See* Exhibit E.  In addition, SBA noted that SBA had referred several documents and/or portions

thereof to EPA for a disclosure determination because those documents originated with EPA.  *Id.*

SBA referred one document to OMB for a disclosure determination for the same reason.  *Id.*

Five of the twenty withheld records appear to be duplicates.  *Id.*  Again, SBA claimed—without

providing any justification or releasing reasonably segregable non-exempt portions of the records—that the withheld records are exempt under Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5).  *Id.*

42.    SBA's response to Plaintiffs' appeal does not include an explanation of why each document is properly withheld from disclosure or release reasonably segregable non-exempt portions of the withheld records.  *See id.*

## CLAIM FOR RELIEF

43.    Plaintiffs re-allege and incorporate the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

44.    By improperly withholding records responsive to Plaintiffs' April 25, 2013 request, SBA has violated FOIA's mandate to release agency records to the public.  *See* 5 U.S.C. § 552(a)(3)(A), (a)(6).

45.    Defendant SBA has wrongfully withheld the requested records from Plaintiffs.

46.    Plaintiffs have exhausted the applicable administrative remedies.

47.    Plaintiffs are entitled to obtain the requested records immediately at no cost.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment:

(1) declaring that Defendant SBA has violated FOIA by failing to provide all records responsive to Plaintiffs' FOIA requests;

(2) ordering that Defendant SBA makes all requested records available to Plaintiffs promptly and at no cost to Plaintiffs;

(3) awarding Plaintiffs' litigation costs and reasonable attorneys' fees in this action;

and

(4) ordering such other relief as the Court may deem just and proper.

DATED: December 9, 2013                         Respectfully Submitted,


/s/ Jennifer Duggan

Jennifer Duggan (DC Bar No. 978352)
Environmental Integrity Project
1000 Vermont Ave NW, Suite 1100
Washington, DC 20005
(802) 225-6774
jduggan@environmentalintegrity.org

Abel Russ (DC Bar No. 1007020)
Environmental Integrity Project
1000 Vermont Ave NW, Suite 1100
Washington, DC 20005
(202) 263-4453
aruss@environmentalintegrity.org

Thomas Cmar
Earthjustice
5042 N. Leavitt Street, Suite 1
Chicago, IL  60625
(312) 257-9338
tcmar@earthjustice.org


*Counsel for Plaintiffs*