**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ENVIRONMENTAL INTEGRITY PROJECT, et al.**,<br><br>           Plaintiffs,<br><br>                 v.<br><br>**SMALL BUSINESS ADMINISTRATION, et al.**,<br><br>           Defendants. | Case No. 1:13-cv-01962-CRC |

## MEMORANDUM OPINION

The Effluent Limitation Guidelines ("ELGs") are federal requirements that limit what toxins may be discharged from coal-fired power plants. Plaintiffs Environmental Integrity Project, Earthjustice, and Sierra Club filed Freedom of Information Act ("FOIA") requests with the Small Business Administration ("SBA") and the Office of Management and Budget ("OMB") for records regarding OMB's review of an Environmental Protection Agency ("EPA") proposed update to the ELGs. SBA and OMB provided hundreds of documents in response to the requests, but withheld others based on the deliberative process privilege. Plaintiffs brought this action challenging the agencies' assertion of the privilege and their refusal to release allegedly segregable factual information contained in the records they did release. Plaintiffs also contest OMB's ability to claim the deliberative process privilege at all in light of a 1993 executive order, EO 12866, directing OMB's Office of Information and Regulatory Affairs ("OIRA") to disclose all documents exchanged with an agency during the regulatory review process. The parties have cross-moved for summary judgment. Because SBA's Vaughn index and affidavits are too brief and conclusory for the Court to determine whether the privilege

applies, it will reserve judgment on SBA's withholdings pending an *in camera* review of the relevant documents. In contrast, the Court finds OMB's submissions to be sufficient to support its privilege assertion, EO 12866 notwithstanding. The Court will therefore grant summary judgment for Defendants as to OMB's withholding.

**I.    Background**

This case stems from a proposed change in the Steam Electric ELGs, the regulations limiting the amount of pollutants coal-fired power plants may discharge into rivers, streams, and lakes. See Pls.' Statement of Material Facts ("Pls.' Statement") at ¶ 1.[1] According to Plaintiffs, coal-fired plants discharge massive amounts of pollutants into the nation's waterways every year. Id. In early 2013, OMB led an inter-agency review of a proposed rule to revise the ELGs. Id. ¶ 5. Representatives of SBA actively participated in this review. Id. ¶ 6. After a ninety-day review period, a different—and, Plaintiffs contend, weaker—version of the rule initially proposed by EPA was published in the Federal Register. Id. ¶¶ 3, 5.

In April 2013, plaintiffs submitted identical FOIA requests to SBA and OMB. Id. ¶ 7. The requests sought the release of records in three categories:

> (1) all records exchanged and all records related to any meetings, telephone conversations, emails, or any other communications between [SBA/OMB] and the utility industry, representatives of the utility industry, trade group, special interests groups, and/or other non-governmental parties related to the Effluent Limitation Guidelines for the Steam Electric Generating Category; wastewater discharges from coal-fired power plants; and/or treatment technologies, or best available technology economically achievable ("BAT") for wastewater discharges from coal-fired power plants since April 3, 2013;
>
> (2) all records exchanged and all records related to any meetings, telephone conversations, emails, or any other communications between [SBA/OMB] and the EPA; [SBA/OMB], Council on Environmental Quality; Executive Office of the President; and/or White House staff, including, but not limited to, Heather Zichal,

---

[1] Defendants do not dispute the following background facts. See Defs.' Response to Pls.'s Statement of Material Facts, ¶¶ 1-7.

>Rob Nabors, and Denis McDonough during interagency review for EPA's proposed Steam Electric ELGs Rule; and
>
>(3) all records related to handling of bottom ash wastewater, flue gas desulfurization (FGD) wastewater, and combustion residual leachate.

Compl. ¶ 36.

In June 2013, SBA provided Plaintiffs all category (1) and (3) records, and eventually released all but eleven category (2) records, which it withheld under FOIA Exemption 5.  Pls.' Statement of Material Facts, ¶¶ 8-11.  OMB initially released 140 pages of records, but withheld in their entirety thousands of pages of records that it claimed were also exempt from disclosure under FOIA Exemption 5.  Id. ¶ 13.  After Plaintiffs timely appealed, OMB released an additional 850 pages of records with heavy redactions.  Id. ¶ 14.  OMB continued to withhold hundreds of documents in whole or in part.  Id. ¶ 15.

Plaintiffs filed this action against SBA and OMB in December 2013.  In November 2014, Defendants moved for dismissal or, alternatively, for summary judgment.  In support of their motion, the agencies submitted Vaughn indices and declarations from Claudia Rodgers, SBA's FOIA Officer and Deputy Chief Counsel, and Dominic Mancini, Deputy Administrator of OIRA.  Defendants filed supplemental declarations from Ms. Rodgers and Mr. Mancini in January 2015.

**II.     Standard of Review**

Congress passed FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Am. Civil Liberties Union v. U.S. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011).  The statute imposes a general obligation on the government to provide records to the public.  5 U.S.C. § 552(a).  Although FOIA provides exemptions to this general obligation to disclose, 5 U.S.C. § 552(b), "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," NLRB v. Robbins Tire &

Rubber Co., 437 U.S. 214, 242 (1978).  Thus, FOIA "'exemptions are explicitly made exclusive,'" Milner v. U.S. Dep't of Navy, 562 U.S. 562, 565 (2011) (citing EPA v. Mink, 410 U.S. 73, 79 (1973)), and they "must be 'narrowly construed,'" id. (citing FBI v. Abramson, 456 U.S. 615, 630 (1982)).

FOIA cases are appropriately decided on cross-motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In deciding a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The government bears the burden to establish that its claimed exemptions apply to each document for which it invokes an exemption.  Am. Civil Liberties Union v. U.S. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011).  The government cannot satisfy this burden with affidavits that are vague or conclusory, or merely parrot the statutory standard.  Consumer Fed'n of Am. v. U.S. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006).  The declarations must describe the justifications for withholding in "specific detail, demonstrate[ing] that the information withheld logically falls within the claimed exemption."  Am. Civil Liberties Union, 628 F.3d at 619.  "When demonstrating that a FOIA exemption applies to some portion of a document withheld, the agency must also provide a detailed justification for its non-segregability," Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002), and the agency should "describe what portion of the information is non-exempt and how that material is dispersed throughout the document," Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1997).

4

**III.    Analysis**

SBA and OMB both claim the remaining documents are exempt from disclosure under FOIA Exemption 5.  That exemption permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege."  Formaldehyde Inst. v. U.S. Dep't of Health & Human Servs., 889 F.2d 1118, 1121 (D.C. Cir. 1989) (citations omitted).  The Court will address the applicability of FOIA Exemption 5 to SBA and OMB in turn.

    A.    SBA

Plaintiffs contend that SBA's Vaughn index and affidavits are insufficient to properly invoke Exemption 5 and fail to justify why non-protected material cannot be segregated from protected material and disclosed.  In order to obtain protection under the deliberative process privilege, the agency must demonstrate that the materials are "both predecisional and part of the deliberative process."  Id. (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151–52).  A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at a decision, and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  A document may be withheld "'if the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the

agency and thereby undermine the agency's ability to perform its functions.'" <u>Formaldehyde Inst.</u>, 889 F.2d at 1122 (citing <u>Dudman Commc'ns Corp. v. U.S. Dep't of Air Force</u>, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  Factual information, however, "may be protected only if it is inextricably intertwined with the policy-making processes." <u>Soucie v. David</u>, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971).

The Court agrees with Plaintiffs that SBA's descriptions of the withheld documents are insufficient to justify invoking the deliberative process privilege.  SBA's declarations and <u>Vaughn</u> index recite the general elements of the deliberative process privilege without explaining in relative detail how they apply to the documents in question.  The first Rodgers declaration states the SBA records "are inter-agency or intra-agency memorandum," and that "the communications [were] pre-decisional." Rodgers Decl. ¶ 8.  She writes that "disclosure of these documents would inhibit candor in the decision-making process." <u>Id.</u> ¶ 9.  Ms. Rodgers claims that "[t]he documents withheld . . . were generated as part of the decision-making process," Rodgers Supp. Decl. at ¶ 6, and protection under Exemption 5 is appropriate as disclosure "could potentially stifle frank and honest communication between agencies," <u>id.</u> at ¶ 7.  The <u>Vaughn</u> index provides no meaningful additional information.  For each of the documents, SBA simply denotes "(b)5" and provides bare descriptions such as "Email re: Steam electric v3 april 1" and "Email re: SteamElec ELG – pollutant loadings/removal calculations." Rodgers Decl. Ex. E at 6–7.

Such conclusory statements that "parrot" the case law do not support withholding. Similarly, SBA's brief descriptions in its <u>Vaughn</u> index do not demonstrate what role each document "play[ed] in the administrative process," <u>Coastal States Gas Corp.</u>, 617 F.2d at 867, or "specifically identify[] the reasons why [this] particular exemption is relevant," <u>Mead Data</u>

6

Cent., Inc., 566 F.2d at 251. Nor do they establish that the agency made a finding as to "'which portions of the document are disclosable and which are allegedly exempt.'" Wilderness Soc. v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973)).

The Court's typical remedy for such deficiencies in an agency's submissions would be to give the agency an opportunity to prepare a more detailed declaration and Vaughn index. Given the small number of withheld documents, however, the Court will attempt to expedite matters by directing SBA to submit the eleven withheld for *in camera* review. See Vaughn, 484 F.2d at 825 (noting that *in camera* review may be appropriate "particularly where the information [sought] is not extensive"). The Court will reserve judgment on the parties' motions as to SBA's privilege assertions pending that review.

### B. OMB

OMB also relies on the deliberative process privilege to withhold the majority of its unreleased documents and on the attorney work-product privilege to withhold a smaller subset. Plaintiffs similarly claim that OMB's Vaughn index and affidavits are insufficiently detailed to successfully assert Exemption 5 and fail to demonstrate why no redacted material could be segregated from protected material and disclosed. Before examining OMB's submissions, however, the Court must address a legal question unique to OMB's claim of privilege: whether a 1993 executive order precludes OMB's assertion of the privilege altogether.

#### 1. Executive Order 12866

Plaintiffs contend that OMB's assertion of the deliberative process privilege is foreclosed by Executive Order 12866, ("EO 12866"). The Executive Order, which primarily aims to improve planning and coordination in the regulatory process, requires OMB to "make available

7

to the public all documents exchanged between OIRA and the agency during the review by OIRA under this section." Regulatory Planning and Review, 58 Fed Reg. 51,735, § 6(b)(iii)(D) (Sept. 30, 1993). Plaintiffs concede that the Executive Order's disclosure requirement is not judicially enforceable. Pls.' Opp'n Mot. to Dismiss & Cross-Mot. for Summ J., at 21 (citing EO 12866, § 10). They argue, rather, that the existence of the Order defeats any reasonable expectation on the part of OMB that its communications during the inter-agency review process will remain confidential, absent which there is no basis for the deliberative process privilege. See Dist. Hosp. Partners, L.P. v. Sebelius, 971 F. Supp. 2d 15, 30 (D.D.C. 2013) ("[P]ublic availability [of documents] in accordance with Executive Order 12,866 undermines any claim of privilege."), aff'd , No. 14-5061, 2015 WL 2365718 (D.C. Cir. May 19, 2015). OMB responds that its expectation of confidentiality grows from its long-standing position that EO 12866's disclosure requirement applies only to exchanges made by OIRA personnel at the branch-chief level and above. Indeed, Plaintiffs do not contest that OMB has consistently treated staff-level communications with the agencies as falling outside the scope of the Order. In light of this policy, the Court has little trouble concluding that the OMB staffers who engaged in the withheld communications here did so with the settled expectation that their communications with agency staff would not be made public. The privilege therefore applies to those staff-level communications.[2]

---

[2] That having been said, OMB's interpretation of EO 12866 is not without its critics. In 2003 and again in 2009, the Government Accountability Office recommended that OMB reexamine its "branch chief and above" limitation so as to allow for additional disclosures consistent with EO 12866's straight-forward mandate that "all" exchanged documents be made public. See Government Accountability Office, Improvements Needed to Monitoring and Evaluation of Rules Development as Well as to the Transparency of Regulatory Reviews 10 (Apr. 2009); Government Accountability Office, OMB's Role in Reviews of Agencies' Draft Rules and the Transparency of Those Reviews 12 (Sept. 2003). OMB nevertheless reaffirmed the policy. While OMB's commitment to its long-standing interpretation only bolsters the Court's

One wrinkle remains with respect to OMB's "branch chief and above" policy. A number of the withheld documents reflect communications by an OIRA desk officer who had been designated an *acting* branch chief. Given his title, Plaintiffs argue that this individual's communications fall within EO 12866's disclosure requirements even as interpreted by OMB. Mr. Mancini attests in his supplemental declaration, however, that OMB treated the individual in question as a staff member for purposes of this FOIA request because he "was functioning as a desk officer for this rulemaking and was not confirmed as a branch chief." Mancini Suppl. Decl. ¶ 5 n.1. As Plaintiffs have not challenged the factual basis of this representation, the Court will likewise treat the individual as a staff member and apply Exemption 5 to his communications.

2. <u>Deliberative Process Privilege</u>

Moving to the application of FOIA Exemption 5, OMB's submissions confirm that the records in question reflect precisely the type of communications that the deliberative process privilege was designed to protect. Mr. Mancini's declaration explains that the withheld and redacted sections reflect discussions that took place when OIRA was consulting with EPA and other agencies, receiving and analyzing comments, discussing options with EPA and executive branch officials, and revising regulatory text. Mancini Decl. ¶ 10. The exchanges reflect the staff's efforts to fulfill OMB's mandate to gather information from agencies on a proposed rule and make recommendations on regulatory coordination. <u>Id.</u> ¶¶ 8, 17. These exchanges therefore preceded the decision on the final rule. As for their subject-matter, the Mancini declaration indicates that the "withheld materials summarize, describe, and provide the staff's views, analysis, suggestions, opinions and other communications with Executive Branch officials." <u>Id.</u>

---

conclusion that OMB staff operate under an assumption of confidentiality, it should not be lost on OMB that the gap between its position and the plain language of EO 12866 will continue to expose it to arguments that broader disclosure should be expected.

¶ 16. They contain "the staff's opinions and recommendations," id. ¶ 18, in the form of summaries of the rule, id. ¶ 20, and draft regulatory language and opinions on consequences, id. ¶ 22.

Plaintiffs also selected a 100-page sample of withheld records for OMB to describe in a Vaughn index. Id. ¶ 4. The listed descriptions confirm that the records reflect candid discussions leading up to the agency's recommendations on the proposed rule. Emails in one series "highlight and summarize portions of the draft" EPA report on the incremental cost of pollution removal. Mancini Decl. at 18. Another email described an attachment which provided EPA draft analysis on the consequences of the potential rule. Id. at 19. A memorandum from SBA to OIRA provided "comments about EPA's draft proposed ELG rule, proposing revisions, and recommendations." Id. at 25. These are the sort of opinions, assessments, and recommendations that the agency needs its staff to share without reservation. They are therefore properly protected by the deliberative process privilege, embodied in FOIA Exemption 5.

Plaintiffs counter that somewhere in the redacted records there must be factual information that could be separately released. The Mancini declaration, however, explains that this is not likely to be the case. Mr. Mancini states that he reviewed each page listed in the index. Because the issues "involved complex economic, scientific, legal, and policy issues of major significance," the redacted portions of the documents dealt with "a mixture of facts, law and policy." Mancini Decl. ¶ 19. He explains:

> [A]malgamation of factual information closely related to opinions and policy recommendations . . . are necessarily inextricably intertwined with the policymaking and regulatory oversight process. Moreover, due to the back-and-forth discussion process . . . , the disclosure of the manner of selecting or presenting facts in these documents would reveal the authors' thinking.

Id. OMB's Vaughn index entries support this assertion. For example, an "[e]mail chain between SBA and OIRA discuss[ed] SBA comments to [the] draft proposed ELG rule as

well as [the] priority of those comments." Mancini Decl. at 24. Data attached to that email would also reflect the staff members' opinions and priorities. Since the comments reflect the type of candid discussion that is protected by the deliberative process privilege, the factual information a staff member selected to support his or her position is also privileged.[3]

### IV.    Conclusion

For the reasons stated above, the Court will grant Defendants' motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment as to OMB. It will reserve judgment on the motions as they relate to SBA. The Court will issue an order consistent with this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:    August 5, 2015

---

[3] OMB also withheld six documents under the attorney work-product privilege. Mancini Decl. ¶ 26. Since the Court concludes that these documents were properly withheld pursuant to the deliberative process privilege, it need not decide whether the agency properly invoked the attorney work-product privilege.